UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Carlos Ocampo, | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 1023 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| Timothy D. Sickmeyer and | ) | |
| Janel L. Forde, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

The Illinois Department of Revenue ("IDOR") terminated Plaintiff Carlos Ocampo's employment, a decision that Defendant Janel L. Forde approved in her official capacity as the Director of the Illinois Department of Central Management Services ("CMS") and that Defendant Timothy D. Sickmeyer upheld in his official capacity as Chairman of the Illinois Civil Service Commission. Ocampo, proceeding *pro se*, filed this employment discrimination lawsuit, raising race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Ocampo also seeks relief under the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/1 *et seq*. Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Ocampo has not adequately alleged a basis to proceed against Defendants on any of his claims, the Court dismisses his complaint.

## BACKGROUND[1]

Ocampo worked at IDOR as a Revenue Tax Specialist II. Ocampo submitted several complaints against IDOR Chief of Enforcement Vincent Cacioppo and other IDOR personnel concerning allegations of discrimination and public corruption with the Office of Executive Inspector General. In turn, several IDOR employees submitted complaints against Ocampo for harassment, reoccurring false allegations, and various incidents of inappropriate conduct. On March 23, 2022, IDOR recommended Ocampo's discharge based on charges that included unbecoming conduct, misuse of state time and equipment, and harassment. Forde approved the charges seeking Ocampo's discharge on April 7, 2022. Ocampo then appealed the decision to the Civil Service Commission. An administrative law judge issued a proposal for decision on July 8, 2022, to which Ocampo responded. Having reviewed the proposal for decision and Ocampo's response, Sickmeyer, as well as the other Civil Service Commission members, approved of the decision to discharge Ocampo on July 21, 2022.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

---

[1] The Court takes the facts in the background section from Ocampo's complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

*Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In their motion to dismiss, Defendants raise the following grounds for dismissal of Ocampo's complaint: (1) sovereign immunity bars the § 1983 and IWA claims; (2) Defendants are not proper parties to the Title VII or IWA claims;[2] (3) § 1981 does not provide a remedy for claims against state actors; (4) Defendants do not qualify as "persons" for purposes of a claim under § 1983; (5) judicial immunity protects Sickmeyer from suit; and (6) Ocampo has not sufficiently stated a claim under § 1983 or the IWA. Instead of responding to Defendants' arguments, Ocampo's response raises unrelated grievances against Defendants' counsel, the IDOR director, and other non-defendants.[3] As Defendants argue in their reply, Ocampo's failure to address the merits of their arguments amounts to waiver. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." (citations omitted)); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)

---

[2] In their motion, but not in the supporting memorandum, Defendants also raised the argument that Ocampo failed to exhaust his administrative remedies under Title VII.

[3] Ocampo also has filed numerous declarations and affidavits on the docket, raising issues unrelated to resolution of the pending motion to dismiss. The Court does not take these filings into account in ruling on the pending motion. The Court instructs Ocampo to refrain from filing these declarations and affidavits going forward unless they are related to a pending motion.

("Failure to respond to an argument . . . results in waiver."). Nonetheless, the Court briefly addresses the reasons why Ocampo cannot proceed on his claims against Defendants.

I.   **Section 1981 Claim**

Turning to the § 1981 claim first, Ocampo cannot pursue such a claim against Defendants. Section 1981 "prohibits racial discrimination in the making and enforcement of private as well as public contracts." *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 668 (7th Cir. 2014). But § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 669 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)). Thus, Ocampo cannot proceed separately on a § 1981 claim against Defendants, who are both state actors.

II.   **Title VII Claim**

As for Ocampo's Title VII claim, Title VII does not allow for individual liability. *Passananti v. Cook Cnty.*, 689 F.3d 655, 677 (7th Cir. 2012). To the extent Ocampo seeks to proceed against CMS or the Civil Service Commission by naming Defendants in their official capacities, nothing in the complaint suggests that CMS or the Civil Service Commission qualifies as an "employer" under Title VII. *See DaSilva v. Indiana*, 30 F.4th 671, 674 (7th Cir. 2022) ("In suits against state entities, that term ['employer'] is understood to mean the particular agency or part of the state apparatus that has actual hiring and firing responsibility." (alteration in original) (quoting *Hearne v. Chicago Bd. of Educ.*, 185 F.3d 770, 777 (7th Cir. 1999))). In other words, Ocampo can only pursue a Title VII claim against IDOR, the state agency that had actual hiring and firing responsibility over Ocampo.

Further, even assuming that CMS or the Civil Service Commission qualify as Ocampo's employer, Ocampo nonetheless could not pursue a Title VII claim against these entities (or

Defendants in their official capacities) because he failed to exhaust his administrative remedies. In order to proceed on a Title VII claim, "a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice, in deferral states like Illinois." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). Here, over 300 days have passed since Ocampo's termination, and he admits that he did not file a complaint with the EEOC. Therefore, Ocampo cannot proceed against Defendants under Title VII.

**III.    Section 1983 Claim**

The Court thus turns to whether Ocampo can raise his race discrimination and retaliation claims pursuant to § 1983.[4] Ocampo has sued Defendants in their official capacities, which is the equivalent of suing the State of Illinois. *See Carver v. Sheriff of LaSalle Cnty.*, 243 F.3d 379, 381 (7th Cir. 2001) ("The § 1983 suit was against him in his official capacity (which is to say, against the office)[.]"). A state and state officials acting in their official capacities are not subject to suit under § 1983 for monetary damages, however. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Thus, to the extent that Ocampo seeks monetary damages, he cannot proceed against Defendants under § 1983.

But Ocampo also requests injunctive relief in the form of reinstatement. As *Will* recognized, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167

---

[4] The Court interprets Ocampo's § 1983 claim as one based on violation of § 1981. Ocampo cannot hold Defendants liable under § 1983 for an alleged violation of Title VII, since, as discussed, they are not proper parties to such a claim. *See Huebschen v. Dep't of Health & Soc. Servs.*, 716 F.2d 1167, 1170 (7th Cir. 1983), *abrogated on other grounds by Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101 (2002).

n.14 (1985)); *see also Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999) ("Under the longstanding doctrine of *Ex Parte Young* [209 U.S. 123, 159–60 (1908)], a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law."). To determine whether Ocampo's claims avoid the Eleventh Amendment bar under *Ex Parte Young*, the Court must determine whether he "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Here, Ocampo's complaint meets these requirements. *See Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000) ("[A]n injunction that orders a state employee who has been demoted because of his exercise of a federally protected right to be restored to his previous position is not barred by the Eleventh Amendment even though it imposes a salary obligation on the state."); *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986) ("The injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment. The goal of reinstatement and the removal of damaging information from the plaintiff's work record is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements."); *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 940–41 (N.D. Ill. 2006) ("[W]hen a student like Doe alleges that he was dismissed in violation of the ADA, he can, consistent with the Eleventh Amendment, bring a claim for reinstatement against the responsible official under *Ex Parte Young*."). Thus, the Eleventh Amendment does not pose a bar to his reinstatement request under § 1983.[5] *See Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir. 1987) (remanding "for

---

[5] To the extent Ocampo may also seek injunctive relief on behalf of other whistleblowers, he does not have standing to raise such requests. *See Hudson v. Foxx*, No. 18-CV-08243, 2021 WL 1222871, at *4 (N.D. Ill. Mar. 31, 2021) ("Hudson seeks to 'champion the rights of other' ASAs, which even if altruistic

consideration of the reinstatement claim based on Kashani's allegation that the defendant officials intentionally discriminated against him on the basis of his national origin").

Nonetheless, because Defendants cannot effectuate Ocampo's requested relief of reinstatement, he cannot pursue his request for reinstatement against them. As Ocampo acknowledges, IDOR, not CMS or the Civil Service Commission, employed Ocampo. This means that the IDOR director, and not Forde or Sickmeyer, is the appropriate party for any requested injunctive relief. *See DaSilva*, 30 F.4th at 674 (employer, for purposes of suits brought by state employees, is the state agency that can supply the requested remedy, such as reinstatement). Therefore, the Court must dismiss Ocampo's § 1983 claims against Defendants.

## IV. IWA Claim

Finally, the Court turns to Ocampo's IWA claim. "The Eleventh Amendment bars actions in federal court against a state, its agencies, and its officials in their official capacities." *Martinez v. Ill. Dep't of Human Servs.*, No. 22 C 6755, 2023 WL 4473271, at *1 (N.D. Ill. July 11, 2023) (citing *Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012)). Further, "state rules of immunity are binding in federal court with respect to state causes of action." *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) (quoting *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991)). In Illinois, the State Lawsuit Immunity Act bars all actions against the State with limited exceptions. 745 Ill. Comp. Stat. 5/1. One such statute, the Court of Claims Act, provides the Illinois Court of Claims with exclusive jurisdiction over claims against the State related to violations of state law. 705 Ill. Comp. Stat. 505/8(a).

Here, Ocampo brings his IWA claim against Defendants in their official capacities, which amounts to a suit against the State. *Parmar v. Madigan*, 2018 IL 122265, ¶ 21. Although an

---

is still a 'no-go' as he 'plainly lacks standing to assert the Fourteenth Amendment rights of other' CCSAO employees" (citation omitted)).

exception exists for certain claims seeking to enjoin violations of state law or where the state officer is alleged to have acted in excess of his authority, *see id.* ¶ 22, here Ocampo seeks only damages from Defendants under the IWA and does not allege that they acted in excess of their authority, instead merely alleging that they approved and upheld the IDOR's decision to discharge him in line with their official duties. Therefore, sovereign immunity bars him from proceeding on his IWA claim against Defendants in federal court.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [20]. The Court dismisses Ocampo's § 1981 and Title VII claims with prejudice and his § 1983 and IWA claims without prejudice.

Dated: September 6, 2023

SARA L. ELLIS
United States District Judge